# IN THE COURT OF APPEALS OF IOWA

No. 22-0489
Filed February 22, 2023

**MATHEW JOSEPH LLOPIS,**
Petitioner-Appellant,

**vs.**

**ELIZABETH ERIN BLACK,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Sean McPartland, Judge.

Mathew Llopis appeals from a district court decree of paternity establishing custody, visitation, and support for the parties' child. **AFFIRMED.**

Mathew Joseph Llopis, Casa Grande, Arizona, self-represented appellant.

Chad E. Schneider of Hastings, Gartin, and Boettger LLP, Ames, for appellee.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**VAITHESWARAN, Presiding Judge.**

Mathew Llopis and Elizabeth Black lived together in Arizona. Black returned to Iowa when she was "roughly 18 weeks pregnant" and gave birth to a child in early 2019.

The following year, Llopis filed a petition to establish custody and visitation. The parents stipulated to joint legal custody and Black's retention of physical care. They agreed to a gradual increase in Llopis' visits, disagreeing only on the details of a visitation plan. The parents also stipulated to Llopis' net monthly income and to the fact that Black did not earn wages. They disagreed on the amount of child support to be paid by Llopis.

The case proceeded to trial on visitation and child support. Following trial, the district court imposed a visitation schedule more closely aligned with Black's proposal. The court ordered Llopis to pay child support in an amount that deviated from the guideline amount proposed by Black but was more than the amount proposed by Llopis.

On appeal, Llopis challenges (I) the visitation schedule; (II) the amount of child support and the district court's failure to allocate his transportation costs; and (III) decisions made at the pretrial conference and with respect to the admission of certain exhibits.

## I.    *Visitation*

The district court set forth four "stages" of visitation for Llopis and imposed "visitation terms," which included "general requirements and conditions to

advance" to the next stage as well as "consequences of an adverse event" that would cause Llopis to revert to the prior stage.[1]  The stages were as follows:

| Stage | Duration | Visitation Schedule: Time, Place & Manner |
|---|---|---|
| Stage 1 | No less than 6 months | • Phone Calls and/or Video Chats Every Monday, Wednesday, Saturday, and Sunday and major holidays at a regular time agreed upon by the parties<br>• 2 Supervised 2-hour Visits per month with Kids First or other agreed facilitator or third-party |
| Stage 2 | No less than 6 months | • Phone Calls and Video Chats as set forth in Stage 1 above; and<br>• 2 Supervised 4-hour Visits per month in public, supervised by a 3rd party as agreed upon by the parties |
| Stage 3 | No less than 6 months | • Phone Calls and Video Chats as set forth above; and<br>• 2 Unsupervised 8-hour Visits every other weekend (either Saturday or Sunday) |
| Stage 4 | Continuous (following Stage 3) | • Phone Calls and Video Chats as set for the above; and<br>• Regular Parenting Time (as set forth below) |

---

[1] The court defined an "adverse event" in the decree.  Although the court gave Black preliminary authority to terminate a visit upon a "reasonable belief" that an adverse event occurred, the court specified the circumstances that would constitute an adverse event and required her to file "a written request supported by an affidavit under oath" and obtain a judicial determination of an adverse event.  That language distinguishes decrees found to have impermissibly delegated discretion to control visits to the opposing party.  *See In re Marriage of Jenkin*s, No. 22-0656, 2023 WL 382301, at *3 (Iowa Ct. App. Jan. 25, 2023); *In re Marriage of Kanetomo*, No. 19-2008, 2020 WL 5650593, at *4 (Iowa Ct. App. Sept. 23, 2020).

Llopis argues the stages provided for an "alarmingly excessive" number of supervised visits. In his view, "ordering an entire year of minimal supervised visitation" "before he can have unsupervised visitation with the child" was "an abuse of discretion." On our de novo review, we disagree.

Llopis acknowledged a history of alcohol and methamphetamine use that resulted in convictions on driving under the influence (DUI) related charges. He further acknowledged a sobriety date of well under a year. He admitted to a pending criminal charge and his placement on intensive supervised probation for prior convictions, all of which prevented a move to Iowa in the near term. Most critically, Llopis only saw his child once prior to the paternity trial. Given his limited contact, he "100 percent agree[d]" to "getting parenting time in stages." He also conceded his "criminal history" provided grounds for a gradual plan. Llopis' concessions support the district court's decision to require supervised visits for a year. *See In re Jensen*, No. 11-1418, 2012 WL 837208, at *4 (Iowa Ct. App. Mar. 14, 2012) (stating the visitation schedule should be "tailored to the best interests of" the child).

Llopis next contends he should have received "equal or as equal as possible parenting time with the child." The district court defined "regular parenting time" in the fourth stage as "regular every-other weekend overnight visitation from 5:00 pm (or after school) on Friday until 5:00 pm on Sunday and on [h]olidays." The court's definition comported with Llopis' stipulation to Black's exercise of physical care. The stipulation, together with uncertainties associated with Llopis' move to Iowa,

supported the district court's decision to limit his regular parenting time to every other weekend.

## II. Child Support

A court may deviate from the child support guidelines with a written finding "that the guidelines would be unjust or inappropriate" because "[s]ubstantial injustice would result to the payor, payee, or child(ren)" or "[a]djustments are necessary to provide for the needs of the child(ren) or to do justice between the parties, payor, or payee under the special circumstances of the case." Iowa Ct. R. 9.11(1), (2).

At trial, Llopis asked the district court for an order requiring him to pay $201 per month in child support. He arrived at the figure by factoring in his travel costs from Arizona to Iowa, together with his employment income. He suggested that, if minimum-wage income were imputed to Black, his requested amount would be reasonable.

Black, in contrast, sought $570 per month in child support. She pointed out that she did not earn wages and Llopis at one time had two jobs.

The district court ordered Llopis to pay $375 per month. The court stated, "To the extent that such amount represents a deviation from the calculation of child support based upon Child Support Guidelines proposed by either of the parties . . . such deviation is appropriate in the best interests of the child and to do justice between the parties . . . ."

On appeal, Llopis contends "the special circumstances of this case, including that [he] has to fly from Arizona to Iowa every 6 weeks for visitation,

warrant a variation from the Iowa Child Support Guidelines and calculate a new child support amount accordingly." The district court accepted Llopis' calculation of child support based on an imputation of minimum-wage income to Black. The court stated, "[t]o the extent that such amount represents a deviation from the calculation of child support based upon Child Support Guidelines proposed by either of the parties," the "deviation is appropriate." On our de novo review, we conclude the court's child-support determination inured to Llopis' benefit, whether or not transportation costs were factored into the calculation. *See Jass v. Atkinson*, No. 18-1790, 2019 WL 2371925, at *6 (Iowa Ct. App. June 5, 2019) (concluding reduction of child-support obligation to accommodate transportation expense "was an equitable solution to the transportation dilemma"). A further reduction would not have served the child's best interests.

Relatedly, Llopis asked the district court to require a thirty-percent contribution from Black toward his travel costs. *See id.* In an order on a request for reconsideration, the court clarified that Llopis' imminent move to Iowa served as grounds to deny the request. We conclude the court's decision was equitable. *See In re Marriage of Galleger*, No. 20-0302, 2020 WL 6480120, at *5 (Iowa Ct. App. Nov. 4, 2020) (concluding an order with respect to transportation expenses was equitable).

### III. Pretrial Conference/Exhibits

Iowa Court Rule 1.602(1) allows a court "in its discretion" to "direct the attorneys for the parties and any unrepresented parties to appear before it for a conference . . . before trial." Any interested counsel or the court may ask a reporter

to record the conference. Iowa Ct. R. 1.603. Following a conference, "an order shall be entered reciting the action taken." Iowa Ct. R. 1.604. Llopis argues the conference was "untimely" and the district court failed to "record[]" its order on "the removal of exhibits, or . . . that no witnesses could testify."

Rule 1.602(1) afforded the district court discretion to set a pretrial conference and schedule the time. The court scheduled one for the day before trial. The following day, at the beginning of trial, the district court summarized what took place at the pretrial conference. The court cited "extensive conversations with" the parties regarding "how things would go" at trial and expressed a belief that the conversation "was productive in narrowing some of the issues" for trial. The court noted that each of the parties had filed a "specific request for relief" and a stipulation. The court summarized the procedure that would be used at trial, "consistent with [the] conversation" the previous day. The court's summary of what transpired at the pretrial conference was an effective substitute for the pretrial conference order required by rule 1.604.[2] We discern no abuse of discretion in the district court's scheduling of the conference or the court's handling of matters at the pretrial conference as documented in the trial record. *See, e.g.*, *In re Marriage of Heiar*, 954 N.W.2d 464, 469 (Iowa Ct. App. 2020) ("We review evidentiary rulings and other matters relating to the course and conduct of a trial, not regulated

---

[2] After Llopis filed his notice of appeal, he sought to amend the record with respect to the way the pretrial conference was conducted and with respect to one of the exhibits. The district court filed an order memorializing what was clear from the record.

by statute, for abuse of discretion." (internal citations and quotation marks omitted)).

Llopis also argues certain exhibits were missing "factual information" relating to "visitation with the child and the extent of [his] criminal background." In his view, the exhibits "lacked trustworthiness." The challenged exhibits were (1) a copy of a public case search of Llopis' name on an "Arizona Judicial Branch–Public Access" website; (2) a photograph of text messages between the parties, including one in which Llopis referred to a pending assault charge; (3) a photograph of a police log describing Llopis' arrest for assault; (4) Llopis' "Criminal Court Case Information–Case History"; (5) a picture from the Public Access website detailing Llopis' DUI-related charges; (6) photographs of bruises; and (7) notes commending Llopis' lawn care skills. The district court overruled authentication and hearsay objections to the exhibits and noted the last challenged exhibit was offered by Llopis himself.

We assume without deciding that Llopis' objections to the exhibits were well taken. *See* Iowa Rs. Evid. 5.801(c) (defining "hearsay" as a statement "[t]he declarant does not make while testifying at the current trial or hearing" which "[a] party offers into evidence to prove the truth of the matter asserted in the statement"), 5.802 (stating "[h]earsay is not admissible," subject to certain exceptions), 5.901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *cf.* Iowa R. Evid. 5.801(d)(2)(A) (defining as non-hearsay statements "offered against an

opposing party" that were "made by the party in an individual or representative capacity"). Even if the exhibits were improperly authenticated or amounted to hearsay, the evidence entered the record without objection through the testimony of Llopis and Black.[3] Because the exhibits were cumulative of that testimony, admission was nonprejudicial. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

We affirm the district court's decree.

**AFFIRMED.**

---

[3] The first exhibit corroborated Llopis' assertion that the pending assault charge referenced in the first, second, third, and fourth exhibits was dismissed. As for the photo of bruises, Llopis filed a motion to amend the record to reflect that the bruises had nothing to do with Black. Post appeal, the district court filed an order granting the request to amend the description of the bruises as Llopis requested.